UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSHUA E. WILLIAMS, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM J. REDMAN and JULIE LAWSON, <br><br> Defendants. | CAUSE NO. 3:20-CV-196-JD-MGG |

OPINION AND ORDER

Joshua E. Williams, a prisoner proceeding without a lawyer, was housed at the St. Joseph County Jail from August 2019 through August 2020 awaiting trial on federal charges when he filed this lawsuit. ECF 1. He has since pled guilty, was sentenced, and moved to federal prison. ECF 10. The court screened his complaint as required by 28 U.S.C. § 1915A and found that it did not state a claim because he sued the county sheriff and jail warden without alleging how either of them were personally involved in the alleged constitutional violations. ECF 14. He now files an amended complaint, ECF 17, which the court must screen and dismiss if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. A filing by an unrepresented party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings

drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

In the amended complaint, Williams still names only Sheriff William J. Redman and Warden Julie Lawson as defendants and clarifies that they "are responsible for the jail policies and running the jail." ECF 17 at 5. He claims they had notice of his complaints through grievances addressed to them, which he attached to his original complaint. ECF 1-1. But there is no indication that either defendant ever saw the grievances so as to support a claim against them in their individual capacities. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."). Therefore, any claims must be against defendants in their official capacities. It is unnecessary to sue both the warden and the sheriff, as a suit against either in their official capacities is the same as a suit against St. Joseph County itself. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012). Therefore, Warden Lawson will be dismissed as duplicative.

"[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). Therefore, Williams must plausibly allege municipal liability as laid out in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Monell* does not allow liability based on unconstitutional acts of individual employees, but instead requires an action attributable to the organization as a whole. Moreover, Sheriff Redman cannot be held liable if a jail employee contravened an otherwise constitutional jail policy without his knowledge. *See Howell v. Wexford Health Sources*, 987 F.3d 647, 654 (7th Cir. 2021) (noting

2

that to avoid respondeat superior liability under § 1983 it is "key to distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices"). There are several ways in which a plaintiff may prove *Monell* liability:

> First, she might show that the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Second, she might prove that the constitutional deprivation was visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels. Third, the plaintiff might be able to show that a government's policy or custom is made by those whose edicts or acts may fairly be said to represent official policy. As we put the point in one case, a person who wants to impose liability on a municipality for a constitutional tort must show that the tort was committed (that is, authorized or directed) at the policymaking level of government. Either the content of an official policy, a decision by a final decisionmaker, or evidence of custom will suffice.

*Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc) (quotation marks, citations, and internal alterations omitted).

Williams alleges that no inmate is allowed to participate in Friday Congregational prayer as required by the Islamic faith. Furthermore, he says that defendants do not allow inmates to purchase and have in their possession prayer beads, prayer rugs, and a kufi to cover his head. ECF 17 at 5-6. Williams' allegations suggest a jail-wide policy denying all inmates the opportunity to practice the Islamic faith, as opposed to an individual failing in how the jail's policy on religion was carried out in his particular case. The former states a claim under *Monell*, the latter does not. *See Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303-04 (7th Cir. 2010) (noting "an isolated act of an individual employee . . . would be insufficient to establish a widespread custom or practice" under *Monell*).

Prisoners have a right to exercise their religion under the Free Exercise Clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). Monetary

3

damages are available for violations of the First Amendment, although restrictions that limit the exercise of religion are permissible if they are reasonably related to legitimate penological objectives, which include safety, security, and economic concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Here, the complaint states a claim that jail policy does not allow an inmate to participate in Friday prayer or have access to prayer beads, prayer rugs, or a kufi, as required by the Islamic faith.

The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, provides broader protection than the First Amendment for religious practices. It states that "No government shall impose . . . a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see also Holt v. Hobbs*, 574 U.S. 352, 356 (2015). Williams' complaint states a claim under RLUIPA, however his transfer from the jail affects the relief available to him under that statute.

Congress passed RLUIPA pursuant to its power under the Spending Clause and authorizes lawsuits to "obtain appropriate relief against a government" for RLUIPA violations. 42 U.S.C. § 2000cc-2(a); *Cutter v. Wilkinson*, 544 U.S. 709, 715-16 (2005) (discussing how RLUIPA was enacted under the Spending and Commerce Clause after the Religious Freedom Restoration Act ("RFRA") was invalidated as applied to the

states because it exceeded Congress' remedial powers under the Fourteenth Amendment). As relevant here, government is defined as:

> (i) a State, county, municipality, or other governmental entity created under the authority of a State;
>
> (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and
>
> (iii) any other person acting under color of State law;

42 U.S.C. § 2000cc-5(4)(A). The Supreme Court held that the phrase "appropriate relief" is not an unambiguous waiver of a state's Eleventh Amendment immunity, and so a litigant cannot sue either a state or a state official in an official capacity for money damages under the statute. *Sossamon v. Texas*, 563 U.S. 277, 285-88 (2011). Similarly, RLUIPA does not permit a suit against an individual for money damages because the individual does not receive federal funds. *See Nelson v. Miller*, 570 F.3d 868, 886-87 (7th Cir. 2009), *abrogated on other grounds by Jones v. Carter*, 915 F.3d 1147, 1149-50 (7th Cir. 2019). The possibility of money damages against a county is an open question.

The Supreme Court, however, recently interpreted identical "appropriate relief" language in RFRA to allow money damages in suits against federal officials in their individual capacities. *Tanzin v. Tanvir*, 141 S. Ct. 486, 492 (2020). The two statutes are closely related. *See Sossamon*, 563 U.S. at 281 ("RLUIPA borrows important elements from RFRA—which continues to apply to the Federal Government—but RLUIPA is less sweeping in scope."); *Holt*, 574 U.S. at 356 (calling RFRA and RLUIPA "sister statute[s]"); *Koger v. Bryan*, 523 F.3d 789, 798-99 (7th Cir. 2008) (interpreting RLUIPA in light of RFRA caselaw). This suggests that the phrase "appropriate relief" in RLUIPA encompasses money damages when counties are sued. *Cf. Tanzin*, 141 S. Ct. at 492-93

5

(differentiating *Sossamon* based on "[t]he obvious difference . . . that this case features a suit against individuals, who do not enjoy sovereign immunity"); *Sossamon*, 563 U.S. at 288-89 (determining whether "appropriate relief" constitutes an express waiver of states' sovereign immunity is a different question than when money damages are included in "appropriate relief" in other contexts). Williams' transfer moots any claim for injunctive relief under RLUIPA.[1] *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). But he has a nonfrivolous argument that a claim for damages survives. *But see Thompson v. Bukowski*, 812 F. App'x 360, 363-64 (7th Cir. 2020) (pre-*Tanzin* case dismissing federal pretrial detainee's RLUIPA claim for injunctive relief after transfer from county jail to federal prison without discussing a possible damages claim).

Any potential damages are limited by the Prison Litigation Reform Act of 1996 ("PLRA"). The PLRA states that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). Williams does not allege any physical or other concrete injury as a result of the alleged infringement of his religious practices, so he is limited to nominal damages. *See Bryan*, 523 F.3d at 804 (noting that PLRA provision limiting damages applies to RLUIPA claims); *Pearson v. Welborn*, 471 F.3d 732, 744-45 (7th Cir. 2006) (allowing only nominal damages award to inmate who prevailed at trial

---

[1] Williams states that "it's still a possibility as a Federal inmate, that I may come or need to come back to the jail for federal holding in the future." ECF 17 at 10. Mere speculation that he may be transferred back is not sufficient to prevent a claim for injunctive relief from becoming moot. *Higgason*, 83 F.3d at 811. Instead, he must show "a realistic possibility" that he will return to the county jail. *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011).

on a First Amendment retaliation claim because he did not suffer physical or other injury as required by the PLRA for compensatory damages). Therefore, Williams states a claim under RUILPA for nominal damages for denying him the practice of his religion.

Williams alleges that his First Amendment rights were violated because he was denied access to reading materials. He alleges that the jail did not allow him to buy his own books and that the book cart the jail provided was inadequately stocked. ECF 17 at 5. Prisoners have a right under the First Amendment to access reading material. *Koger v. Dart*, 950 F.3d 971, 973 (7th Cir. 2020). "Although the First Amendment protects an inmate's access to reading material, prisons may have 'valid penological reasons' for restricting certain books." *Robbins v. Foster*, 723 F. App'x 368, 369 (7th Cir. 2018) (quoting *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012)). Giving Williams the inferences he is entitled to at this stage, he states a claim that the jail policy banning inmates from buying their own books violates the First Amendment.

Williams contends that the law library at the jail is inadequate and so he was not able to research his federal case before or after accepting his plea deal. ECF 17 at 6. Prisoners are entitled to meaningful access to the courts. *Bounds v.* Smith, 430 U.S. 817, 824 (1977). But "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) (emphasis in original).

7

Williams does not allege that he had a potentially meritorious challenge to his plea and therefore does not state a claim.

Williams also alleges a First Amendment violation because the jail copies his incoming mail, gives him the copy, and places the originals in his property without giving him the option to destroy the originals. ECF 17 at 7. This does not state a claim under the First Amendment. His mail is not censored. *Cf. Procunier v. Martinez*, 416 U.S. 396, 413 (1974) (relating when and how prisons may censor outgoing prisoner mail); *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (relating when and how prisons may censor incoming prisoner mail). Nor are the originals destroyed. They are merely held in Williams' property, presumably until his release. *See Dart*, 950 F.3d at 975-76 (finding no constitutional violation when jail officials seized books over the allowed limit as long as inmate retained some property interest in them, such as being "entitled to sell or ship the books, or reclaim them from the Jail at the end of his confinement"). The First Amendment protects *communication*, not pieces of paper. *Cf. Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977) (noting "First Amendment rights are barely implicated" where bulk mailings by prisoners' labor union were prohibited because "appellants have merely affected one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials"). Williams alleges no interference with his ability to read the content of the mail, merely in the form in which it is presented.

Finally, Williams complains about the clothing and footwear provided at the jail. He alleges that inmates get a clean jumpsuit only once a week and are forced to wear

8

the same clothing for daily recreation, daily operations, and sleeping. He further states that the jail does not adequately launder underwear, socks, or t-shirts and that wearing dirty clothing causes rashes and skin diseases. He says the jail-supplied footwear ("shower shoes") is inadequate and exacerbated a knee injury he suffered. ECF 17 at 7-8. Because Williams was a pretrial detainee, these claims must be assessed under the Fourteenth Amendment. *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017). "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that 'amount to punishment.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). It has long been recognized that inmates are entitled to "the minimal civilized measure of life's necessities." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Inmates are held in conditions that amount to punishment when they are not provided with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Id.* (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)).

The allegations in the complaint do not rise to the level of a jail-wide constitutional violation. Williams has not alleged facts to show that once-a-week laundry service is not "reasonably adequate." *Hardeman*, 933 F.3d at 820. Other cases have held that even longer stretches of time without clean clothes does not violate the constitution. *See Passmore v. Josephson*, 376 F. Supp. 3d 874, 881-82 (N.D. Ill. 2019) (collecting cases). Moreover, though Williams states that "inmates are forced to wear dirty clothing daily, causing rashes, skin diseases & unsanitary conditions all of which Plaintiff ha[s] experienced," ECF 17 at 7-8, he does not provide detail to allow a

9

reasonable inference that the jail laundry policy is related to his ailments. Moreover, nothing suggests the alleged harm is widespread across the jail so as to imply the jail laundry policy is inadequate. *Cf. Myers v. Ind. Dep't of Corr.*, 655 F. App'x 500, 503-04 (7th Cir. 2016) (discussing when inadequate laundry procedures might violate the Eighth Amendment). The risk of harm from dirty clothes is too speculative, without more, to establish "an unreasonable risk of serious damage to the prisoner's future health." *See Henderson v. Sheahan*, 196 F.3d 839, 846-47 (7th Cir. 1999). Similarly, the complaint does not plausibly allege the jail-supplied footwear is not reasonably adequate.

For these reasons, the court:

(1) GRANTS Joshua E. Williams leave to proceed against Sheriff William J. Redman in his official capacity for monetary damages for a claim that from August 2019 to August 2020, jail policy did not allow an inmate to participate in Friday prayer or have access to prayer beads, prayer rugs, or a kufi, as required by the Islamic faith in violation of the First Amendment;

(2) GRANTS Joshua E. Williams leave to proceed against Sheriff William J. Redman in his official capacity for monetary damages for a claim that from August 2019 to August 2020, jail policy did not allow an inmate to participate in Friday prayer or have access to prayer beads, prayer rugs, or a kufi, as required by the Islamic faith in violation of the Religious Land Use and Institutionalized Persons Act;

(3) GRANTS Joshua E. Williams leave to proceed against Sheriff William J. Redman in his official capacity for monetary damages for a claim that from August 2019

to August 2020, jail policy did not allow inmates to purchase their own books in violation of the First Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Julie Lawson;

(6) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sheriff William J. Redman at the St. Joseph County Jail with a copy of this order and the amended complaint (ECF 17), pursuant to 28 U.S.C. § 1915(d);

(7) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Sheriff William J. Redman to respond to the complaint as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on May 12, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT