UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSHUA E. WILLIAMS, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:20-CV-196-JD |
| WILLIAM J. REDMAN, | |
| Defendant. | |

OPINION AND ORDER

Joshua E. Williams, a prisoner without a lawyer, is proceeding in this case on three claims against Sheriff William J. Redman in his official capacity for money damages related to his incarceration at the St. Joseph County Jail (SJCJ) between August 2019 and August 2020. First, he is proceeding on a claim "that from August 2019 to August 2020, jail policy did not allow an inmate to participate in Friday prayer or have access to prayer beads, prayer rugs, or a kufi,[1] as required by the Islamic faith in violation of the First Amendment[.]" ECF 23 at 10. Second, he is proceeding on a claim "that from August 2019 to August 2020, jail policy did not allow an inmate to participate in Friday prayer or have access to prayer beads, prayer rugs, or a kufi, as required by the Islamic faith in violation of the Religious Land Use and Institutionalized Persons Act[.]" *Id.* Third, he is proceeding on a claim "that from August 2019 to August

---

[1] A kufi is a "brimless cap traditionally worn by some Muslin men, originally from West Africa." *Kufi*, Oxford Dictionaries, Oxford University Press, https://premium.oxforddictionaries.com/us/definition/american_english/kufi (last visited Nov. 21, 2022).

2020, jail policy did not allow inmates to purchase their own books in violation of the First Amendment[.]" *Id.* at 10-11. Sheriff Redman filed a motion for summary judgment. ECF 66. Williams filed a response, and Sheriff Redman filed a reply. ECF 73, 74. The summary judgment motion is now fully briefed and ripe for ruling.

Before turning to the merits of the motion, a brief discussion of the relief available to Williams is in order. Because Williams did not suffer a physical injury, the Prisoner Litigation Reform Act (PLRA) limits his recovery on the First Amendment claims to nominal damages.[2] *See* 42 U.S.C. § 1997e(e); *Pearson v. Welborn*, 471 F.3d 732, 744-45 (7th Cir. 2006) (allowing only nominal damages award to inmate who prevailed at trial on a First Amendment retaliation claim because he did not suffer physical or other injury as required by the PLRA for compensatory damages). Further, because this case is proceeding against Sheriff Redman in his official capacity, Williams will not be able to recover punitive damages for a First Amendment violation. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268 (1981) ("For several reasons, however, we conclude that the deterrence rationale of [42 U.S.C.] § 1983 does not justify making punitive damages available against municipalities."); *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) ("This official-capacity claim against the Sheriff is considered one against a municipality, and municipalities are immune from punitive damages in § 1983 suits."). Therefore, if Williams prevails on his First Amendment claims, he would be entitled to recover only nominal damages. *See Carey v. Piphus*, 435 U.S. 247, 267 (1978) (allowing

---

[2] Williams' responses to Sheriff Redman's interrogatories do not list any physical or other injury. *See* ECF 48 at 12-19.

2

plaintiff to recover "nominal damages not to exceed one dollar" for a constitutional violation that did not cause any actual injury).

In light of this limitation on damages, nothing is gained by analyzing the First Amendment claims that duplicate those brought under RLUIPA. As courts note, RLUIPA offers broader protection than the First Amendment, so if a jail's policy violates RLUIPA, then it also violates the First Amendment. *See Holt v. Hobbs*, 574 U.S. 352, 357 (2015). Therefore, William can receive full relief for his religion claims through RLUIPA; a First Amendment claim would be redundant. *See Schlemm v. Wall*, 784 F.3d 362, 363 (7th Cir. 2015) ("Schlemm's arguments under the Constitution's First and Fifth Amendments (applied to the states by the Fourteenth) we bypass, because [RLUIPA] provides greater protection."); *Koger v. Bryan*, 523 F.3d 789, 801 (7th Cir. 2008) (finding prison officials liable under RLUIPA and therefore not considering constitutional claims based on the same conduct); *Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006) (considering only prisoner's RLUIPA claim, and not his constitutional claim, because RLUIPA offered more favorable protection).  Courts should avoid deciding constitutional issues when possible. *See ISI Int'l, Inc. v. Borden Ladner Gervais, LLP*, 256 F.3d 548, 552 (7th Cir. 2001) ("[F]ederal courts are supposed to do what they can to avoid making constitutional decisions, and strive doubly to avoid making unnecessary constitutional decisions."); *Mercado v. Dart*, 604 F.3d 360, 361-62 (7th Cir. 2010) (noting it was "unnecessary and inappropriate" to discuss relevancy of the constitution's Eleventh Amendment because a statutory rule applied). Therefore, the court will

dismiss the First Amendment claim regarding Friday prayer, prayer beads, prayer rugs, and kufis as unnecessary.

Turning to the merits, summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

The Religious Land Use and Institutionalized Persons Act (RLUIPA) prohibits governmental entities from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see generally Holt v. Hobbs*, 574 U.S. 352 (2015). "In establishing a claim under RLUIPA, the plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion, and

4

(2) that the challenged practice substantially burdens that exercise of religion." *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008). If the plaintiff establishes a prima facie case, the burden shifts to defendants to show "their practice is the least restrictive means of furthering a compelling governmental interest." *Id.*

*Prayer rug and kufi*

Williams is proceeding against Sheriff Redman for violating his rights under RLUIPA based on a policy between August 2019 and August 2020 that did not allow him access to a kufi and prayer rug. ECF 23 at 10. The parties agree to the following facts, which the court accepts as undisputed: Prior to December 2019, the SJCJ "did not have formal or actual kufis and prayer rugs available for inmates." ECF 67 at 5; ECF 68-1 at 5; ECF 73 at 6. In the fall of 2019, the jail ordered formal kufis and prayer rugs to provide to the inmates. ECF 68-1 at 5. Prior to receiving these formal prayer rugs, inmates requesting a prayer rug, including Williams, were provided with the option to receive a second towel to be used as a prayer rug. ECF 68-1 at 5; ECF 73 at 6. Williams, though, asserts that a towel is not a sufficient substitute for a prayer rug, which he claims must be of a certain size and "Islamic in nature." ECF 73 at 6. There is no evidence the jail offered any alternative for a kufi.[3] In December 2019, the SJCJ received the formal kufis and prayer rugs and provided them to Muslim inmates. ECF 68-1 at 5; ECF 73 at 6. On December 17, 2019, Williams received a formal kufi and prayer rug. *Id.*

---

[3] The defendants assert in their summary judgment motion that inmates had the option of using a yarmulke as a head covering prior to December 2019, but they cite no evidence in support of that assertion. ECF 67 at 14.

5

Here, it is undisputed Williams was not allowed access to a formal kufi or prayer rug prior to December 17, 2019, at which time he received a formal kufi and prayer rug. Thus, because it is undisputed Williams received a formal kufi and prayer rug on December 17, 2019, summary judgment is warranted in Sheriff Redman's favor to the extent Williams argues the SJCJ's policy of not allowing him access to a kufi and prayer rug between December 17, 2019, and August 2020 violated his rights under RLUIPA. It only remains to be determined whether the SJCJ's policy of not allowing Williams access to a formal kufi and prayer rug between August 2019 and December 17, 2019, violated his rights under RLUIPA.

Sheriff Redman does not contest that using a towel in lieu of a prayer rug was a substantial burden on Williams' religious exercise, nor does he contest that the lack of a kufi before December 17, 2019, was a substantial burden as well. Thus, the court turns to whether the restriction furthered a compelling governmental interest and was the least restrictive means necessary to achieve that interest. In his summary judgment motion, Sheriff Redman does not provide any explanation for why the SJCJ did not allow inmates access to formal kufis and prayer rugs prior to December 17, 2019. *See* ECF 67 at 6. Summary judgment must be denied on this claim.

### *Prayer beads*

Williams is proceeding against Sheriff Redman for violating his rights under RLUIPA by enforcing a policy between August 2019 and August 2020 that did not allow him to possess prayer beads. ECF 23 at 10. Sheriff Redman concedes the SJCJ has a policy prohibiting inmates from possessing any prayer beads, and he does not dispute

6

that this substantially burdened Williams' religious exercise. ECF 67 at 14. Instead, Sheriff Redman argues the SJCJ's policy banning prayer beads furthers its compelling interest in maintaining the safety and security of the jail, as prayer beads can be used to hide contraband, as a weapon against other inmates, to identify gang affiliation, or for self-harm. ECF 67 at 6-7.

Williams argues Sheriff Redman is exaggerating the safety concerns associated with prayer beads and there are less restrictive ways to maintain security while still allowing inmates to possess prayer beads. Williams contends prayer beads are no more harmful than numerous other items in the jail, such as clothing, plastic packaging from food, combs, or hairbrushes. ECF 73 at 5-6. He asserts the jail can alleviate the safety concerns associated with prayer beads by regulating their size, color, and material. *Id.* Williams argues that other Federal and State prisons, including prisons where he previously has been an inmate, allow inmates to possess prayer beads with some restrictions. *Id.* Case law supports Williams' contention that many prisons allow inmates to possess prayer beads with some restrictions. *See Charles v. Frank*, 101 F. App'x 634 (7th Cir. 2004) (Wisconsin prison restricted inmates to wearing and using prayer beads only in their cells, and to carrying them outside of their cells only if they remained unseen in pocket); *Howard v. Braemer*, No. 20-cv-1366-pp, 2021 WL 50876 (E.D. Wis. Jan. 6, 2021) (Wisconsin prison restricted inmates to possessing only prayer beads available in DOC vendor catalogs); *Shaw v. Norman*, No. 6:07cv443, 2009 WL 1780123 (E.D. Tex. June 22, 2009) (Texas prison restricted inmates to possessing only black prayer beads); *Mathews v. Jones*, No. 4:14cv289-WS/CAS, 2016 WL 4942071 (N.D. Fla.

7

Aug. 8, 2016) (Florida prison restricted inmates to possessing only prayer beads of certain sizes and colors); *Alameen v. Coughlin*, 892 F. Supp. 440 (E.D.N.Y. 1995) (New York prison restricted inmates to possessing only black prayer beads). Sheriff Redman contends that the security risks at a jail differ from those in a prison. ECF 67 at 6-7. But this issue is not so one-sided that the court can decide it at summary judgment. A reasonable jury could conclude the SJCJ's policy prohibiting prayer beads was not the least restrictive means of furthering its security interest. Thus, summary judgment must be denied on this claim.

*Participation in Friday prayer*

Williams is proceeding against Sheriff Redman for violating his rights under RLUIPA by enforcing a policy between August 2019 and August 2020 that did not allow him to participate in Friday prayer. ECF 23 at 10. The parties agree that the SJCJ offered a Muslim religious service to inmates every Friday morning between 7:00 a.m. and 9:00 a.m., when a religious leader named Ollie JoJo would come to the jail to provide religious services. ECF 68-1 at 6; ECF 68-3 at 2. Williams argues the SJCJ's policy of holding Muslim religious services only on Friday mornings between 7:00 a.m. and 9:00 a.m. violated his rights under RLUIPA by denying him the ability to participate in a Muslim prayer service called Jumu'ah, which is required under the Islamic faith to be observed on Friday afternoons between 12:00 p.m. and 2:00 p.m. ECF 73 at 2-5. Sheriff Redman admits the SJCJ did not provide Jumu'ah service to inmates, but argues it had legitimate penological interests for not being able to provide the service. ECF 74 at 5.

8

Sheriff Redman argues that offering a morning service instead of an afternoon service served a compelling governmental interest in efficiently maintaining the daily operation of the jail. ECF 67 at 7-8. He says the jail was unable to provide a Jumu'ah service on Friday afternoons because it would have burdened the jail's staffing, as jail staff was busy during that time frame handling court appearances, addressing medical concerns of inmates, and monitoring housing units.[4] *Id.* Sheriff Redman notes that court dates on Friday afternoons are particularly important because if a new intake misses their initial court appearance, a decision on bond or other release from jail will have to be delayed over the weekend until the next business day. *Id.* at 11-12. He argues that taking deputies away from these services to provide security for a Jumu'ah service would have interrupted the jail's daily operation by straining jail staff in other areas of the jail. *Id.* at 8.

Williams responds that holding a Friday afternoon Jumu'ah service would require only one staff member and there is no evidence there is a lack of staff at SJCJ. ECF 73 at 3. He argues that Sheriff Redman cannot rely on Ollie Jojo's supposed unavailability because the Sheriff presents no evidence that another religious leader could not have been found to lead a Jumu'ah service. *Id.* Finally, Williams posits that the jail could have allowed Muslim inmates to lead their own service. *Id.*

---

[4] Sheriff Redman also argues the jail did not have a religious official available to hold a Jumu'ah service on Friday afternoons, as Ollie JoJo was available only on Friday mornings. ECF 67 at 8. Williams, on the other hand, asserts Ollie JoJo told the Islamic inmates that he was available to conduct a Jumu'ah service on Friday afternoons but was prevented from doing so by jail officials. ECF 73 at 4. But neither party provides any evidence directly from Ollie JoJo regarding his availability for Friday afternoon prayer services, so this argument cannot be factored into the analysis.

9

Sheriff Redman does not dispute Williams' contention that holding a religious service requires only one staff member, nor does he provide evidence the SJCJ could not spare a staff member on Friday afternoons. He also does not discuss whether another religious leader could have been found. But he argues that allowing inmates to lead their own service would create a security risk by granting certain inmates positions of authority over other inmates and creating opportunities for the religious service to be used for gang meetings and the dissemination of views interfering with order in the jail. ECF 67 at 8.

On this record, the court cannot conclude at summary judgment that Sheriff Redman met his burden to prove beyond dispute that the Friday morning service was the least restrictive means of furthering the efficient running of the jail. Thus, summary judgment must be denied on this claim.

*Access to books*

Williams is proceeding against Sheriff Redman on a claim "that from August 2019 to August 2020, jail policy did not allow inmates to purchase their own books in violation of the First Amendment[.]" ECF 23 at 10. Prisoners have a right under the First Amendment to access reading material. *Koger v. Dart*, 950 F.3d 971, 973 (7th Cir. 2020). "Although the First Amendment protects an inmate's access to reading material, prisons may have 'valid penological reasons' for restricting certain books." *Robbins v. Foster*, 723 F. App'x 368, 369 (7th Cir. 2018) (quoting *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012)). In determining whether a jail's restrictions are legitimate, the court considers (1) whether the restriction is rationally connected to a legitimate government

objective; (2) whether there is an "alternative means of exercising" the restricted right; (3) what impact the restriction would have on other inmates as well as prison staff and facility resources; and (4) the existence of other options that would suggest the prison is exaggerating its concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

Sheriff Redman provides evidence that, between August 2019 through August 2020, the jail had a policy allowing all inmates to purchase books from outside vendors and have the vendors ship the books directly to the jail. ECF 68-1 at 7; ECF 68-9 at 1. In his response, Williams argues that, during this time period, he had issues obtaining books that had been ordered for him by his wife. ECF 73 at 7-8. However, Williams does not dispute the jail had a policy allowing him to order books from an outside vendor and have the books delivered directly to the jail. The fact that Williams had difficulties obtaining books from his wife, rather than ordering the books directly from a vendor, does not show Williams was not allowed to purchase books. Thus, because it is undisputed that, between August 2019 and August 2020, Williams was allowed to order books from an outside vendor and have the books delivered directly to the jail, he cannot show that Sheriff Redman violated his First Amendment rights with a policy of not allowing inmates to purchase their own books. Summary judgment is warranted in favor of Sheriff Redman on this claim.

For these reasons, the court:

(1) DISMISSES the First Amendment claim for a denial of access to a formal prayer rug, kufi, prayer beads, and Friday morning services as an unnecessary duplication of the RLUIPA claim;

(2) GRANTS the defendant's motion for summary judgment (ECF 66) with respect to Williams' claims that (i) Sheriff Redman violated his rights under the First Amendment through a policy between August 2019 and August 2020 that did not allow inmates to purchase their own books, and (ii) the SJCJ's policy of not allowing him access to a formal kufi and prayer rug between December 17, 2019, and August 2020 violated his rights under RLUIPA;

(3) DENIES the defendants' motion for summary judgment (ECF 66) in all other respects; and

(4) REMINDS the parties this case is now proceeding only on Williams' claims that Sheriff Redman violated his rights under RLUIPA through: (a) a policy between August 2019 and December 17, 2019, that did not allow him access to a formal prayer rug and kufi; (b) a policy between August 2019 and August 2020 that held the jail's weekly Muslim religious service on Friday mornings rather than Friday afternoons; and (c) a policy between August 2019 and August 2020 that did not allow him to have access to prayer beads.

SO ORDERED on November 22, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

12